UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CAROLYN JOHNSON** | **CIVIL ACTION** |
| | **NO. 19-12823** |
| **VERSUS** | |
| **BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL COLLEGE, ET AL.** | **SECTION: T(4)** |

## ORDER

Before the Court is a Motion for Summary Judgment filed by Defendant, Louisiana State University and Agricultural and Mechanical College ("LSU"), seeking dismissal of several harassment claims brought under Title VII of the Civil Rights Act of 1964 by Plaintiff, Carolyn Johnson.[1] Plaintiff filed an opposition to the Motion.[2] LSU was given leave to file a Reply Memorandum.[3]

Also pending before the Court is LSU's Renewed Motion to Strike,[4] which concerns the personal affidavit of Plaintiff that she submitted in support of her opposition of LSU's Motion for Summary Judgment.[5] Plaintiff filed an opposition to the Motion to Strike.[6] LSU was then granted leave to file a Reply Memorandum,[7] and Plaintiff was allowed to file a Sur-Reply.[8] The interrelatedness of the issues and briefing on the Motion for Summary Judgment and Motion to Strike compel the Court to consider the motions together.

---

[1] R. Doc. 122.
[2] R. Doc. 125.
[3] R. Doc. 133.
[4] R. Doc. 127.
[5] The general thrust of LSU's Motion to Strike is that Plaintiff's Affidavit is riddled with inadmissible evidence and, therefore, is improper summary judgment evidence that should not be considered by the Court.
[6] R. Doc. 131.
[7] R. Doc. 138.
[8] R. Doc. 141.

Having considered the Parties' briefing, evidence, and law, the Court grants the Motion for Summary Judgment and denies the Motion to Strike as moot.

## BACKGROUND

This lawsuit results from an incident on August 10, 2018, (the "Incident") wherein Plaintiff was slapped on her buttocks by her co-worker, Dr. Jeffrey Schumacher.[9] At all times pertinent, Plaintiff was employed as an Administrative Coordinator 4 at the LSU Health Science Center – New Orleans ("LSU").[10] Dr. Schumacher was a veterinarian in the Division of Animal Care where Plaintiff worked, but he did not have any supervisory authority over Plaintiff.[11] Plaintiff alleges that the Incident was the culmination of ongoing sexual and racial harassment by Dr. Schumacher, which included: greeting Plaintiff as "Boo;" having inappropriate conversations with colleagues within earshot of Plaintiff; looking down Plaintiff's blouse while she was seated at her desk; suggesting they "get together;" and calling Plaintiff pretty and commenting on her breasts on one occasion.[12]

The Incident occurred on a Friday. Accordingly, Plaintiff did not return to work until the following Monday, August 13, 2018.[13] Upon returning to work Monday morning, Plaintiff saw Dr. Schumacher for just a few seconds, but they did not speak.[14] Plaintiff did not tell her supervisor, Shantell Curtis, or anyone else with LSU about the Incident at that time.[15] On August 16, 2018, Plaintiff reported the Incident to Jason Johnson with LSU's Human Resources Management office.[16] Between August 16, 2018, and September 18, 2018, Human Resources conducted an

---

[9] R. Doc. 52 (Plaintiff's Supplemental and Amended Complaint).
[10] R. Doc. 122-3, ¶ 1; R. Doc. 125-1, ¶ 1.
[11] R. Doc. 122-3, ¶¶ 2, 29-35; R. Doc. 125-1, ¶¶ 2, 29-35. Rather, Plaintiff's Supervisor was Shantell Curtis.
[12] R. Doc. 122-3, ¶ 3; R. Doc. 125-1, ¶3; R. Doc. 52.
[13] R. Doc. 122-4, p. 8:12-19.
[14] R. Doc. 122-4, p. 9:2-4.
[15] R. Doc. 122-4, p. 9:4-6.
[16] R. Doc. 122-3, ¶ 7; R. Doc. 125-1, ¶ 7.

investigation into the Incident.[17] During this timeframe, Plaintiff was assigned to work in various locations, including other offices where she did not have contact with Dr. Schumacher.[18] Plaintiff knew that the work station moves were temporary while the investigation was ongoing.[19] On September 18, 2018, Plaintiff was informed that the investigation was complete, her complaint against Dr. Schumacher was substantiated, she could move back to her original workspace, and Dr. Schumacher would be moved to a separate location.[20]

Meanwhile, Plaintiff was seen by her primary care physician on September 10, 2018.[21] Plaintiff was declared disabled for work and prescribed an anti-depressant by her doctor.[22] On September 28, 2018, Plaintiff informed LSU, through her treating psychiatrist, that she should remain out of work until October 8, 2018.[23] Plaintiff remained out on leave until mid-December, 2018, when her treating psychiatrist cleared her to return to work if certain accommodations were made.[24] LSU approved all three of the accommodations requested by Plaintiff and moved her to the Division of Property and Facilities Management.[25] Plaintiff, however, was still unable to return to work and remained out on leave until her leave was exhausted at the end of May 2019.[26] At that time, Plaintiff was informed that she was removed from her position at LSU because her leave had expired and her physician could not give any date upon which Plaintiff could return to work.[27]

---

[17] R. Doc. 122-3, ¶ 15; R. Doc. 125-1, ¶ 15.
[18] R. Doc. 122-3, ¶¶ 10 & 12; R. Doc. 125-1, ¶¶ 10 & 12.
[19] R. Doc. 122-3, ¶ 14; R. Doc. 125-1, ¶ 14.
[20] R. Doc. 122-3, ¶ 16; R. Doc. 125-1, ¶ 16.
[21] R. Doc. 1-5, p. 1.
[22] R. Doc. 1, ¶ 18; R. Doc. 125-1, ¶ 10.v.; R. Doc. 1-5.
[23] R. Doc. 122-3, ¶ 18; R. Doc. 125-1, ¶ 18.
[24] R. Doc. 122-3, ¶ 19; R. Doc. 125-1, ¶ 19. The accommodations requested were: (1) Plaintiff be allowed to work a 20-hour work week before resuming a 40-hour work week; (2) Plaintiff be permitted time off for medical appointments; and (3) Plaintiff be moved out of the Division of Animal Care.
[25] R. Doc. 122-3, ¶ 20; R. Doc. 125-1, ¶ 20.
[26] R. Doc. 122-3, ¶ 21; R. Doc. 125-1, ¶ 21.
[27] R. Doc. 122-3, ¶ 21; R. Doc. 125-1, ¶ 21.

In its current iteration, Plaintiff's Complaint alleges three bases for her Title VII claims. In "Count 1" Plaintiff alleges she was sexually harassed by Dr. Schumacher.[28] "Count 2" asserts the harassment had a racial component insofar as Dr. Schumacher called Plaintiff "Boo" and the inappropriate conversations Plaintiff overhead involved the discussion of the sexuality of African American women.[29] "Count 3" of Plaintiff's Complaint alleges retaliatory harassment for LSU's failure to re-assign Plaintiff to a suitable substitute office during the investigation process instead of requiring her to work in a "storage room."[30]

LSU argues it is entitled to summary judgment because the Incident and other alleged conduct is insufficient to maintain a claim under Title VII for sexual or racial harassment.[31] Further, to the extent Dr. Schumacher's actions would support a Tile VII claim, LSU argues that it had no notice of Dr. Schumacher's conduct before the Incident occurred in August 2018.[32] As such, when LSU became aware of the Incident, it took prompt remedial actions.[33] Finally, LSU argues that Plaintiff's retaliation claim should be dismissed because there is no evidence of an adverse employment action against Plaintiff related to her complaint against Dr. Schumacher.[34] Rather, LSU took necessary steps to separate and insulate Plaintiff from Dr. Schumacher during its investigation.[35]

Plaintiff responds that her sexual and racial harassment claims involved ongoing harassment, not just a single occurrence like the Incident, and, as such, the totality of the circumstances provide her with a viable Title VII claim.[36] Plaintiff contends, however, that even

---

[28] R. Doc. 52.
[29] R. Doc. 52, ¶ 40.
[30] R. Doc. 52, ¶¶ 41-44.
[31] R. Doc. 122-1.
[32] R. Doc. 122-1.
[33] R. Doc. 122-1.
[34] R. Doc. 122-1.
[35] R. Doc. 122-1.
[36] R. Doc. 125.

Case 2:19-cv-12823-GGG-KWR Document 148 Filed 09/30/22 Page 5 of 12

if viewed as a single-incident case, the Incident and Dr. Schumacher's racial remarks are actionable under Title VII.[37] Plaintiff lastly responds that her retaliation claim is not for retaliatory termination, but rather for retaliatory harassment.[38] To that end, Plaintiff argues she was assigned to work in an unsuitable and unsanitary location during the pendency of LSU's investigation. Plaintiff asserts that she was forced to work in these unsavory conditions, referred to by Plaintiff as the "bug room," despite LSU's knowledge of the substandard conditions and its effect on Plaintiff.[39] This retaliatory harassment, according to Plaintiff, shows LSU's failure to take prompt and effective remedial action after Plaintiff's complaint against Dr. Schumacher.[40]

## LAW & ANALYSIS

### I. Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[41] The court must find "a factual dispute to be 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party and a fact to be 'material' if it might affect the outcome of the suit under the governing substantive law."[42] The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact and all reasonable inferences are drawn in favor of the nonmoving party.[43] "Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial."[44] When assessing whether

---

[37] R. Doc. 125.
[38] R. Docs. 125 & 125-4.
[39] R. Docs. 125 & 125-4.
[40] R. Doc. 125, p. 4.
[41] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).
[42] *Voelkel McWilliams Const., LLC v. 84 Lumber Co.*, 2015 WL 1184148, at *5 (E.D. La. Mar. 13, 2015) (quoting *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989)).
[43] *Celotex,* 477 U.S. at 323.
[44] *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 420 n.4 (5th Cir. 2016).

a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[45] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[46]

## II.   Plaintiff's Affidavit

Preliminarily, the Court turns to the issue of Plaintiff's Affidavit,[47] submitted in opposition to LSU's Motion for Summary Judgment. As mentioned above, LSU has moved to strike the Affidavit on the grounds that it does not meet the requirements of Federal Rule of Civil Procedure 56(c)(4).[48] LSU argues that Plaintiff lacks personal knowledge of the matters contained in her Affidavit and further that the statements contain inadmissible evidence.[49] Plaintiff argues that she has sufficient personal knowledge of the Affidavit's contents and that, to the extent any statements therein are inadmissible hearsay, certain hearsay exceptions permit the Court's consideration of the evidence.[50]

Determining the admissibility of Plaintiff's Affidavit is not a prerequisite to the Court's ruling on the Motion for Summary Judgment. Rather, the Court will assume the Affidavit meets the evidentiary requirements of Rule 56(c)(4). Operating under this assumption, however, still

---

[45] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398–99 (5th Cir. 2008).
[46] *Galindo v. Precision Am. Corp*., 754 F.2d 1212, 1216 (5th Cir. 1985); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).
[47] R. Doc. 125-1. The document submitted by Plaintiff is titled "Statement of Admitted and Controverting Facts Incorporating Plaintiff's Affidavit," which the Court understands to serve as Plaintiff's statement of contested material facts as well as her own affidavit in support of her Opposition to LSU's summary judgment. While combining Plaintiff's affidavit with her statement of admitted and contested facts is unusual and arguably runs afoul of Local Rule 56.2, which requires the statement of contested material facts to be "separate and concise," the Court will consider the document in the manner intended by Plaintiff.
[48] Fed. R. Civ. Pro. 56(c)(4) ("Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").
[49] *See* R. Doc. 127.
[50] *See* R. Doc. 131.

requires the Court to evaluate whether the Affidavit creates a genuine issue for trial under the summary judgment standard.

### III. Plaintiff's Claims for Sexual and Racial Harassment

A plaintiff asserting sexual or racial harassment claims under Title VII is required to show that "the harassment created a hostile or abusive working environment."[51] "This type of claim 'embodies a series of criteria that express extremely insensitive conduct against [a protected individual], conduct so egregious as to alter the conditions of employment and destroy their equal opportunity in the workplace.'"[52] The essential elements of a hostile work environment claim based on harassment that a plaintiff must show are:

> (1) she is [a] member of a protected group; (2) she was the victim of uninvited sexual [or racial] harassment; (3) the harassment was based on sex [or race]; (4) the harassment affected a term, condition, or privilege of [her] employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action.[53]

"To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[54] The complained-of behavior "must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so."[55] A court evaluates the conduct under the "totality of the circumstances" by considering "the frequency of the discriminatory conduct; its severity;

---

[51] *Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428, 434 (5th Cir. 2005).
[52] *Paul v. Northrop Grumman Ship Systems*, 309 Fed. Appx. 825, 827 (5th Cir. 2009) (quoting *DeAngelis v. El Paso Mun. Police Officers Ass'n,* 51 F.3d 591, 593 (5th Cir.1995)).
[53] *Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428, 434 (5th Cir. 2005).
[54] *Aryain v. Wal–Mart Stores Texas LP,* 534 F.3d 473, 479 (5th Cir. 2008).
[55] *Harvill,* 433 F.3d at 434.

7

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[56]

The U.S. Fifth Circuit has instructed that the "severe or pervasive" requirement is disjunctive.[57] To that end, the Fifth Circuit has recognized that the determination of whether conduct is sufficiently severe or pervasive is not an exact science:

> [a]n egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment. The inverse is also true: Frequent incidents of harassment, though not severe, can reach the level of pervasive, thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists. Thus, the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct.[58]

Accordingly, isolated incidents may qualify as "severe" when they are "extremely serious," even though they are not "pervasive."[59]

In the present case, the undisputed evidence shows that Dr. Schumacher did, in fact, slap Plaintiff's buttocks on August 10, 2018. Another section of this Court previously held, in this proceeding, that the Incident, standing alone, was not severe or pervasive enough to sustain a Title VII sexual harassment claim under Fifth Circuit precedent.[60] The Court further held that Dr. Schumacher's conduct involved in the Incident was purely sexual in nature and had no racial component to support Plaintiff's racial harassment claim.[61] The Court granted Defendants' Motion to Dismiss and dismissed the case without prejudice.[62] Plaintiff amended her petition, and the case

---

[56] *Id.* (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, (1993)).
[57] *Lauderdale v. Tex. Dep't of Crim. Justice,* 512 F.3d 157, 163 (5th Cir. 2007).
[58] *Id.*
[59] *Paul v. Northrop Grumman Ship Systems*, 309 Fed. Appx. 825, 827 (5th Cir. 2009) (citing *Lauderdale v. Tex. Dep't of Crim. Justice,* 512 F.3d 157, 163 (5th Cir. 2007)).
[60] *See* R. Doc. 26, pp. 4-5 and cases cited therein. This case was originally pending before Section A of the Court. This matter was reallotted to this Section on May 18, 2021. *See* R. Doc. 91.
[61] R. Doc. 26, pp. 5-6.
[62] R. Doc. 26.

was transferred to this section of court for administrative reasons unrelated to the case at which time the instant Motions were filed.[63]

Now, at this summary judgment stage, the Court finds that the posture of Plaintiff's claims remains unchanged by the record evidence. Plaintiff argues that the Incident was the culmination of ongoing and incessant harassment by Dr. Schumacher in the months prior to August 10, 2018. Plaintiff contends that Dr. Schumacher called her "Boo," suggested they "get together, commented on her breasts, had sexually charged conversations about African American women within earshot, and, finally, slapped her on the behind.

Importantly, in support of these allegations, Plaintiff relies solely on her own Affidavit, which was submitted in opposition to LSU's summary judgment.[64] Other than her own Affidavit, Plaintiff fails to refer the court to any record evidence supporting these purported facts. The Court acknowledges that the self-serving and uncorroborated nature of Plaintiff's Affidavit does not reduce its effectiveness in defending against summary judgment.[65] Nonetheless, where an affidavit sets forth ultimate or conclusory facts, as does Plaintiff's here, it is insufficient to overcome summary judgment.[66] Indeed, Plaintiff's Affidavit contains conclusions related to what other individuals saw, heard, thought, and did in relation to Dr. Schumacher's alleged conduct before the Incident. The Court finds that this conclusory evidence fails to create a genuine issue of fact supporting Plaintiff's sexual and racial harassment claims "in the face of conflicting and probative evidence" in the record.[67] The record shows that no witness deposed in this case recalled the conduct Plaintiff now alleges. Moreover, Plaintiff's own deposition testimony directly contradicts

---

[63] R. Doc. 91.
[64] R. Doc. 125-1.
[65] *McClendon v. United States*, 892 F.3d 775, 784 (5th Cir. 2018).
[66] *Lester v. Wells Fargo Bank, N.A.*, 805 Fed. Appx. 288, 292 (5th Cir. 2020) (citing *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 225 (5th Cir. 1991)).
[67] *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013).

her conclusory Affidavit. Plaintiff specifically testified that prior to August 10, 2019, she had a good relationship with Dr. Schumacher.[68] Plaintiff further testified that prior to the incident on August 10, 2018, Dr. Schumacher had never said anything directly to Plaintiff that she believed to be inappropriate.[69] And, despite Plaintiff's contention that she overheard conversations between Dr. Schumacher and others that were sexually and/or racially offensive, Plaintiff never reported those conversations to HR or her supervisor, Shantell Curtis.[70] In short, Plaintiff has failed to show with competent summary judgment evidence an issue of fact remains as to whether Dr. Schumacher's conduct was "severe or pervasive" in order to maintain her Title VII claims.

Even assuming Plaintiff could satisfy the fourth prong of her Title VII claim, she cannot meet her summary judgment burden to show that any issue of fact remains for trial concerning whether LSU knew or should have known of Dr. Schumacher's alleged misconduct and failed to take prompt action. For the same reasons discussed above, Plaintiff's Affidavit cannot serve to create a fact issue when her own deposition testimony, as well as the deposition testimony of all other witnesses, indicates that she never reported Dr. Schumacher prior to the August 10, 2018 Incident. There is no evidence that LSU knew or had reason to know about Dr. Schumacher's alleged conduct before Plaintiff reported it to HR on August 16, 2018. Furthermore, the Court finds the record evidence to show that LSU promptly took remedial actions. It is undisputed that LSU investigated Plaintiff's report between August 16, 2018, and September 18, 2018. During that time, there is no evidence that Plaintiff saw or interacted with Dr. Schumacher. Rather, Plaintiff was provided with a private workstation during the pendency of the investigation.

---

[68] R. Doc. 122-4, p. 5:7-9.
[69] R. Doc. 122-4, p. 5:13-16.
[70] R. Doc. 122-4, pp. 5:17 – 6:24.

## IV. Plaintiff's Retaliation Claim

In order to state a retaliation claim, a plaintiff must show "(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action."[71] An adverse employment action consists of "ultimate employment decisions" such as hiring, firing, demoting, promoting, granting leave, and compensating.[72] "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action."[73]

Here, Plaintiff contends not that her claim arises from a retaliatory termination, but from the "retaliatory harassment" she endured by a delayed investigation and having to work in the "bug room" while the investigation was ongoing. As previously noted, the Court finds there was no unreasonable delay in LSU's investigation. There is also no evidence Plaintiff's job duties, compensation, or benefits were affected by Plaintiff's assignment to the "bug room" as required to maintain her retaliation claim. Accordingly, Plaintiff's claim for "retaliatory harassment" is dismissed with prejudice.

---

[71] *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002).
[72] *See McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004).
[73] *Pegram*, 361 F.3d at 282 (quoting *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)).

## **CONCLUSION**

For the reasons above, **IT IS ORDERED** that the LSU's Motion for Summary Judgment (R. Doc. 122) is **GRANTED,** and that Plaintiff's Title VII claims for sexual harassment, racial harassment, and retaliatory harassment are **DISMISSED WITH PREJUDICE**. **IT IS FURTHER ORDERED** that LSU's Motion to Strike Plaintiff's Affidavit (R. Doc. 127) is **DENIED AS MOOT**.

New Orleans, Louisiana this 30th day of September, 2022.

_____
Greg Gerard Guidry
United States District Judge